UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

Plaintiff,

v.

ORLANDES NICOLE NICKSION,

Defendant.

Case No. 05-CR-146-02-PP

---

**ORDER DENYING DEFENDANT'S MOTION FOR RELIEF FROM APRIL 12, 2005 AND MAY 12, 2005 18 U.S.C. 2703(d) ORDER OBTAINED THROUGH PERPETRATION OF FRAUD UPON THE COURT, UNDER FED. R. CIV. P. 60(d) (DKT. NO. 739) AND GRANTING MOTION FOR STATUS INQUIRY OF PENDING MOTION FOR RELIEF FROM ORDER UNDER FED. R. CIV. P. 60(d) (DKT. NO. 748)**

---

On October 9, 2009, Judge Charles N. Clevert, Jr. sentenced the defendant to a sentence of 480 months in custody. Dkt. No. 623, 627. The defendant appealed on October 30, 2009, Dkt. No. 628, and the Seventh Circuit affirmed the conviction on December 10, 2010, Dkt. No. 687.

On September 23, 2013, the defendant filed the motion that is the subject of this order. Dkt. No. 739. At the time the defendant filed this motion, the case still was assigned to Judge Charles N. Clevert, Jr. The government did not respond to the motion, and the court did not rule on it. On July 14, 2014, the defendant filed a Motion for Status Inquiry of Pending Motion for Relief From Order Under Fed. R. Civ. P. 60(d). Dkt. No. 748. In this motion, he noted that the court had not yet ruled on his September 23, 2013 motion, and asked

1

the court to give him a status update. Id. Again, the case was assigned to Judge Clevert at that time, and the court did not rule on the inquiry.

On April 3, 2015, the defendant's case was re-assigned to Judge Pepper. Because the above-described motions were filed 17 months and 9 months before Judge Pepper received the case, the motions did not appear on Judge Pepper's pending motions reports after the reassignment. On July 13, 2015, however, the defendant filed a notice indicating that he was going to seek a writ of mandamus in the Seventh Circuit if this court didn't rule on his motion within fourteen days. Dkt. No. 771. At that point, the court became aware of the motions.

The defendant's September 23, 2013 motion asked for several things. In the opening paragraph, the motion asked for "vacatur of [his] underlying convictions; or, in the alternative, an evidentiary hearing, following recent discovery of fraud committed upon the Court by agents of the United States . . . ." Dkt. No. 739 at 1. At the end of the motion, the defendant asked the court to "vacate the order authorizing interception of telecommunications involving Defendant and others in the above-styled criminal action." Id. at 7. The defendant made these requests pursuant to Federal Rule of Civil Procedure 60(d).

The defendant alleges that on April 12, 2005, the prosecutors in his case applied for a trap-and-trace on the defendant's telephone, id. at 2-3, and made a request for disclosure of phone records for that phone, id. at 3. The defendant alleges that the information the prosecutors provided the court in support of its

2

requests for these orders contained misrepresentations, which caused the court to issue orders it otherwise would not have issued. Id. at 4. The defendant indicates that he has newly-discovered evidence which proves that the information provided to the court was incorrect. Id.

As indicated above, the defendant entitled his motion a motion for relief from April 12, 2005 and May 12, 2005 18 U.S.C. §2703(d) orders. Section 2703(d) of the criminal code indicates that a court may order a telecommunications entity to disclose certain information "only if the governmental entity [applying for the disclosure] offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." The defendant appears to be alleging that the facts that the government offered back in 2013 did not meet that standard.

The April 12, 2005 and May 12, 2005 orders to which the defendant refers are not on the court's docket; the defendant was not charged until May 17, 2005. Dkt. No. 1. The defendant, however, attached one of them to his motion. Dkt. No. 739 at 14-16. As he indicates, the orders were based on information contained in applications which appear to have been dated April 12, 2005. Id. at 9-11, 17-19. (The court does not see any order dated May 12, 2005.) The defendant indicates that he has attached to his motion as Exhibit C "documentary newly discovered evidence." Id. at 4.

3

As an initial matter, the court observes that there is no Exhibit C (or Exhibits A or B) attached to the defendant's September 23, 2013 motion. What follows his motion, on this court's docket, is the application for the trap-and-trace (pages 9-12), a letter to inmate Ronald Terry from Assistant A.G. Kevin Potter, dated November 30, 2012, stating that the Attorney General's office has no documents responsive to Mr. Terry's request, whatever that was (page 13), Magistrate Judge Goodstein's trap-and-trace order (pages 14-16), the government's application for subscriber records (pages 17-19), a letter from the Milwaukee Police Department to inmate Terry dated June 25, 2013, indicating that the MPD does not have the documents Mr. Terry requested (page 20), and a February 14, 2013 letter from Assistant A.G. Kevin Potter (pages 21-22). The defendant does not say which of these documents constitutes the "newly discovered evidence" which he believes justifies relief, nor does he say what information in these documents justifies that relief.

The court suspects, however, that it may know the issue the defendant is attempting to raise. The application for the trap-and-trace indicates that "the Wisconsin Department of Justice, Division of Criminal Investigation (DCI) is conducting a criminal investigation of Mark A. Cubie, and others . . . ." Id. at 9. The application asks the court to order that the telecommunication service provide the requested information to the DCI. Id. at 11. The subscriber information application indicates that "[t]he Milwaukee High Intensity Drug Trafficking Area (HIDTA) and the Wisconsin Department of Justice, Division of Criminal Investigation (DCI) are conducting a criminal investigation . . . ." Id. at

4

18. "HIDTA" is a multi-agency task force, in which different federal, state and local law enforcement agencies cooperate in working on drug cases.

It appears that Ronald Q. Terry—one of the co-defendants in this case—had, sometime before November 30, 2012, filed public records requests with the Wisconsin Department of Justice, asking for the names of all DOJ agents involved in the case and other information about the case. See id. at 13, the first paragraph. In his November 30, 2012 letter to Mr. Terry, Assistant A.G. Kevin Potter tells Mr. Terry—as, apparently, he had done on previous occasions—that the DOJ records "show[ed] no involvement by DOJ agents in the case you reference . . . ." Id. Mr. Terry must not have been satisfied with this response, because it appears that on February 8, 2013, he communicated with the Department of Justice that he was confused about how the DOJ could have no records regarding his case. Id. at 21. A.A.G. Potter's February 14, 2013 letter to Mr. Terry explained that while the Wisconsin Department of Justice's Division of Criminal Investigation ("DCI") was one of the agencies which participated in Milwaukee HIDTA cases, not all DCI investigators participate in all HIDTA cases, and even when a DCI investigator does participate in a HIDTA case, the Department of Justice doesn't retain records of that case unless the DCI investigator was the lead agent on the case. Id. A.A.G. Potter explained that "no DCI special agents were involved in the investigation involving Mark Cubie, although the HIDTA did plan to use DCI resources to retrieve any results obtained from the requested trap and trace device, and then forward that data to the HIDTA." Id. Finally, A.A.G. Potter told Mr. Terry that "DCI does

5

have records documenting receipt of its share in HIDTA forfeitures connected with the investigation of Mark Cubie." Id. at 22.

The court suspects that the defendant's theory is that the government was not being truthful in its trap-and-trace and subscriber records applications when it told the court that DCI agents were investigating defendant Cubie. On this basis, the defendant argues that Magistrate Judge Goodstein's April 12, 2005 order was invalid, and that any information law enforcement obtained from the trap-and-trace or the subscriber records request ought to have been suppressed.

The court must deny the defendant's motion. First, he makes the motion pursuant to Fed. R. Civ. P. 60(d). The Federal Rules of Civil Procedure govern *civil* cases. They do not apply in criminal cases. Rule 60(d) of the Federal Rules of Civil Procedure is the rule that allows a party in a *civil* case to ask the court for relief from a judgment or order. True, one of the grounds for relief under Rule 60 is "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." But that is only for *civil* litigants. Civil rule 60(d) does not help the defendant.

In civil cases, Rule 60 motions often are referred to as "motions to reconsider." As the Seventh Circuit has stated, "None of the Rules of Criminal Procedure authorizes a generic motion to reconsider; the criminal rules lack a counterpart to the motions authorized by Fed. R. Civ. P. 50(b), 52(b), or 59 . . . ." U.S. v. Rollins, 607 F.3d 500, 502 (7th Cir. 2010). A criminal defendant may file a motion to reconsider, but the time frame within which to

6

do that is fourteen days from the date of the order the defendant wishes to have reconsidered. Id. at 504, Fed. R. App. P. 4(b)(1)(A)(i). So it is far too late for the defendant in this case to file a motion to reconsider in this, his criminal case.

In a *criminal* case, which this is, a defendant who believes his conviction ought to be set aside based on newly-discovered evidence must look to Fed. R. Crim. P. 33. Rule 33(a) allows a court to "vacate any judgment and grant a new trial if the interest of justice so requires." Specifically with regard to newly-discovered evidence, Rule 33(b)(1) states, "Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty. If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case." In this case, the jury returned its verdict on July 2, 2009. Dkt. No. 611. The three-year deadline for filing a Rule 33 motion for a new trial expired July 2, 2012. Thus, his September 23, 2013 motion is too late to provide the defendant relief under Rule 33(b)(1).

The court notes that the defendant may respond that he could not have filed a Rule 33 motion by July 2, 2012, because A.A.G. Potter did not write to defendant Terry until February 14, 2013. This argument does not assist him. In order to prevail on a Rule 33 newly-discovered evidence motion, a defendant must show that the newly-discovered evidence "could not have been discovered before trial through the exercise of reasonable diligence." U.S. v. Woods, 169 F.3d 1077, 1079 (7th Cir. 1999) (citing U.S. v. Gonzalez, 93 F.3d 311, 315 (7th

7

Cir. 1996)). There is no explanation for why the defendant himself did not seek the information defendant Terry sought, and why neither of them did so until, it appears, mid- to late 2012. The defendant could have asked for this information any time between his conviction in 2009 and July 2, 2012, in order to be able to timely file a motion for a new trial.

Finally, the court does not agree with the defendant that the information he has provided—if the court has construed it correctly—demonstrates that the government was untruthful with Magistrate Judge Goodstein in its applications. A.A.G. Potter's letter clearly states that the HIDTA task force was going to use DCI resources to retrieve the trap-and-trace results. The defendant does not challenge the substance of the information the government provided in the trap-and-trace application—the allegations about surveillance and previous trap-and-trace records demonstrating that Cubie had stash houses in Milwaukee, and was distributing drugs to the defendant, Terry and others. Rather, he appears to challenge only the issue of which law enforcement agency was running the investigation. Magistrate Judge Goodstein issued his order based on allegations that law enforcement had evidence of drug dealing among these men—not based on which law enforcement agency was doing the investigating.

The court **GRANTS** the defendant's July 14, 2014 Motion for Status Inquiry (Dkt. No. 748), and provides the status of the September 23, 2013 motion through this order.

8

The court **DENIES** the defendant's September 23, 2013 Motion for Relief from April 12, 2005 and May 12, 2005 18 U.S.C. 2703(d) Order Obtained Through Perpetration of Fraud Upon the Court, Under Fed. R. Civ. P. 60(d).

Dated in Milwaukee this 17th day of July, 2015.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge